My learned friend teaches at the University of New York. May it please the Court, Jeremy Harwood for King David shipping, appearing on behalf of its vessel, the King A, sued in rem. You had formerly been the Tbilisi, is that right? The vessel? The ship had been named Tbilisi when it was owned, that's why the Tbilisi shipping company. Have you ever been in Tbilisi? It's the capital of Georgia. I have been. I haven't been, Your Honor. Long ago. When they still had statues of Stalin, because he came from Tbilisi. He was a Georgian, Your Honor. Yes. There's a sea bag Montefiore's biographies of him. Your Honor, if I may commence. Of course. With the Court's permission, I have reserved five minutes for rebuttal. That's fine. The Court now has appellate jurisdiction over the underlying in rem judgment and the district court's prior orders of sustaining advocacy jurisdiction. It is undisputed that all the issues on appeal are reviewable de novo. I will move to the central legal issue and the heart of our argument, which is stated in point four of our main recliberies. Could you tell me, Mr. Harwood, the current status of this case? The ship? I imagine it's been freed and it's now free. Any lien, any seizure, any warrant? I believe the ship is still floating, Your Honor, and is operating on commercial waters. It's a valuable tanker. Okay. So the thing that's outstanding now is a letter of undertaking? The substitute for the in rem raise, Your Honor. That's correct. In the profession, is it called an LOU or is it called a lieu? I think it's called an LOU, Your Honor. It's called an LOU. Okay. It's fundamental, Your Honor, that in any admiralty in rem action, there must be a valid maritime lien at the time that action is filed. So the syllogism by which we argue that the district court and this court lacks admiralty jurisdiction and therefore the warrant of arrest should be vacated as follows. First, PEMEX's cause of action against the vessel in rem is governed by the Carriage of Goods by Sea Act one year statute of limitation. Second, expiry of that statute of limitations extinguishes the cause of action and the lien, not just the remedy. Third, the statute of limitations, as PEMEX agrees, expired in December 1993 so that the action filed in 2002 was unjustified and wrongful. But the arbitration panel disagrees with you or disagreed with you, didn't it? The arbitration panel dealt, Your Honors, solely with the issue of the in personam claim against Tbilisi shipping. That's important because maybe the in rem relates back to the in personam. But you disagree with the district court statement that the in rem and the in personam action were intermingled, right? Absolutely, Your Honor, and I think PEMEX has abandoned that argument as well. And if I may, to Judge Fuentes' point, it's quite clear that an arbitration panel cannot decide the in rem jurisdiction of a court. And there's a case cited in my brief on that point. Dealing then with how PEMEX gets around this jurisdictional problem is raised what it's called a new legal theory based on two arguments of re-arrest and constructive arrest based on the 1993 LOU or the first LOU. That is a very formidable argument. In fact, I think that's the only argument they have. So tell us why the provisions, the language of the first LOU does not give them the authority to add additional financing. Your Honor, the first LOU in section or paragraph 6 at Joint Appendix page 111 is a reservation of rights clause. And that specifically reserved all rights, claims and defenses of both the shipowner and the ship. Here's what I let me give you the language that's troubling me, and I'm not saying the degree of troublesome there. But it says this, in consideration of PEMEX refraining from arresting the motor vessel and from attaching other property of Tbilisi for its claim for alleged damage to a cargo of diesel, blah, blah. Now here's a problem. Except to the extent that the claim exceeds the amount of security provided herein, can that be interpreted that it then gives rise to a maritime lien later, gives them permission for a maritime lien for the protection? Absolutely not, Your Honor. What it does do is it does not extinguish the lien and the right of arrest at the time the letter was provided, which was in May 1993. And the important issue here, if I may, is the argument raised in 2003 by PEMEX's counsel. He wrote this. He also negotiated this 1993 letter. Excuse me. No, sorry, Your Honor. He wrote in 1993, PEMEX could have arrested the vessel much before the expiration of the COGSA statute of limitations. Instead, it agreed to forbear from doing so in exchange for some security and the right to arrest the vessel for more security if needed. And that's at page 29 of the 2003 brief. In 2007, PEMEX's same counsel who wrote that statement to this court, who negotiated the 1993 letter, has now completely ignored paragraph 6, the preservation of rights, to say what the party's intent was, based on what he claims to be an exceptionally short limitation period, namely seven months. Notwithstanding, he told this court in 2003 that PEMEX could have arrested before the expiration of that time bar. And it didn't do so. So, Your Honor, Judge Alderson, the lien survives for that statutory period. This first letter undertaking did not extinguish the lien. But by the same token, paragraph 6 of this letter undertaking specifically reserved all the vessel's defenses, including if the vessel was arrested after the expiry of the time bar, to assert waiver or rather the expiry of the time bar and statute of limitations. Just as, Your Honors, the second letter of undertaking issued in 2002 had the identical non-waiver or reservation of rights clause and has also preserved our right now in this court to assert the 2002 arrest was untimely. I have to confess my understanding of admiralty is so little that I have some trouble understanding the concepts. But I'm reading, I'm trying to give this a plain reading. And it seems to me that this letter of understanding is a conditional letter. And basically it says that I am not going to arrest your ship. I will forbear that. But I may arrest it at a later date if my security is not sufficient. That's the way I understand it. But it doesn't say within a year or within five years. It's an open-ended condition. It's, Your Honor, it didn't need to state that because it reserved all the time. It reserved all defenses under COGSA statute of limitation. As Penex's counsel said in 2003, it was well known. What you're saying is that this does not justify the subsequent in rem proceeding. This letter would have permitted, as Penex said in 2003, arrest the vessel any time prior to the expiry of that one-year limitation, namely prior to December 1993. As Penex said, it could have arrested prior to the expiration. COGSA's statute did not have any effect on the in personam proceeding before the arbitration panel. Well, that's what the arbitrators ruled. Certainly, both claims are subject to the carriage goods by Sea Act statute of limitations and other provisions in it. There's no question about that. Well, what I get from that is that Penex's claims had not been affected by statute of limitations. In the arbitration, that's correct. That's what the arbitrators ruled, Your Honor. But in 2002, Penex's claims in rem against the vessel were time barred. And the argument below was that there cannot be independent in personam and in rem claims. Supposing I were to disagree with you about the in rem proceeding being time barred. Yes, Your Honor. Now, what effect does that have on the proceeding? If the in rem proceeding is not time barred, then the arrest was valid. Okay. But the fact, if I may, in my 53 seconds that are remaining, Your Honor, the. No, but we'll keep you if we have questions. Well, I. And this part of we does. Go ahead. Yes, thank you, Your Honor. The point being, and about these, this conditional LOU that Judge Fuente has called. This is a letter of undertaking that was negotiated giving the right to rest subject to the reservation of rights in paragraph 6. It is not the usual letter of undertaking that the Fifth Circuit reviewed in Continental Grain in 1959, where the non-waiver of rights clause is specifically states court treats the vessel as if it has been brought into the court's jurisdiction. That is the fundamental distinction here, which I trust. Mr. Harwood. Yes, sir. I understand this argument completely. But let me let me say what bothers me to the point of asking you about it. In paragraph six. It says. What rights or defenses may have under applicable law now isn't COGSA applicable law. And if it is, doesn't the statute of limitations contained in there limit the limit the unlimited nature of the paragraph six. That's what she's claiming. I think I think that's absolutely right. One of the there was not a waiver of the COGSA time bar in paragraph six. In fact, it was expressly reserved along with any other defenses. Thank you. I have some questions. We might as well use you to you. You withheld five hundred and thirty thousand three hundred and twenty of the money that you owed to Tbilisi as security. I think it was the other way around. Your Honor, the penance withheld it. Penance withheld it. Was that the amount that was left that it hadn't paid to the ship owner? That's right. Did it not have any. It didn't withhold the additional amount. I claimed damages of in excess of a million. But it didn't have any security. It didn't have. It knew that it would have to get security by attachment or rest of the ship owner's assets, including the vessel. And it didn't do that. And it didn't do so notwithstanding the statement that it could well have done so prior to the expiration of that period. It could have seized the vessel. It could well have done and it didn't, Your Honor. I'm not sure why. But that's your argument essentially. Absolutely, Your Honor. That they were entitled to the five hundred and thirty thousand, et cetera, but not to the excess. No, Your Honor. They were not entitled to that five hundred and thirty thousand three hundred and twenty, which they withheld wrongfully from. But wasn't the. But they took it as security, Your Honor, for the claim. But wasn't the LLU the security for that? Yes. It was an exchange for to avoid. We were applying for a partial final award because PEMEX is not allowed to withhold hire. This is black letter admiralty law again. It's not allowed to withhold hire as a set off against a cargo claim. So they knew that they would have to pay that hire, but they didn't want to lose it. So they said, well, we'll only pay it if you give us a letter of undertaking. But we recognize we're going to have to get more because our claim, as it eventually came in, is a two million. But they didn't attain security for the increased claim until 2002 by arresting the vessel. And you say that was too late. In terms of the claim against the vessel, it certainly was, Your Honor, because the lien had expired. How did the sum of $707,819.60 was calculated? I just couldn't figure that out. That was the second LLU, the March 22, 2002. That was because PEMEX originally introduced its claim in the sum of the principal sum of 1.9 million. And then asserted in the arbitration it was claiming in the alternative for 1.2 million. So that was the difference. And that was the difference. And then we said, well, you can't claim the alternative. You can't say give us 1.2. But if you didn't give us 1.2, we'll take 1.9. You agreed to these figures, didn't you? So we agreed with PEMEX that subject, of course, to a resolution of the issue of quantum in the arbitration. And in the arbitration, the principal claim was awarded at about 400,000 plus interest, which came up to 8. The arbitrator validated all of these figures. No, Your Honor. The principal claim was 1.2. And the arbitration panel awarded 950,000. No, Your Honor. It awarded 434. Plus interest over the 10 or 12 years of the arbitration. So the principal claim was nowhere close to 1.2 million. I thought the arbitration award was 950,000. And then there were certain credits and offsets. The arbitration award of 950,000, you're right, Judge Winters, was 950,413. That included 100,000 in legal fees, the principal amount, and 411,000 in interest on the principal awarded, which was not at 1.2 million, but only 400,000. What do you want us to do? I mean, you want us to reverse. What do you want us to do besides that? Your Honor, I dealt in the brief with the issue of waiver. And I think of the issues that have now come up in 2007 as opposed to the arguments in 2003, the argument that the parties intended in 1993 to waive the COGSA statute of limitations period, or indeed that the parties must have intended to do that. But I don't think we even have to go back to the court on remand to take evidence as to what the parties intended, because the law is clear. There was no waiver here. The COGSA time bar period was expressly reserved in paragraph 6, as PEMEX recognized in its 2003 brief, Your Honor. So what I would request, humbly, is that the district court's judgment be vacated for lack of admiralty jurisdiction, and the letter of undertaking be returned marked counsel. If the interim claim is time barred, doesn't PEMEX still have a right to the arbitration award? Certainly, Your Honor. For the balance of the arbitration award, it can pursue Tbilisi shipping. But isn't what this case is all about, paying the balance of the arbitration award? That's essentially correct, Your Honor. But the only defendant in the New Jersey action is the vessel in rem, and it is fundamental, as Justice Fields said in 1867, the Rock Island Bridge. The lien and the proceeding in rem are corroborative. So if you're right, they cannot get the $100,000. Not from the ship. $95,000 because the ship is gone. Well, Your Honor, they clearly could have done so, as I said, in 1993, and they chose not to. Okay. Okay. So the ship is not on. Okay. Go ahead. Thank you, Your Honor. Thank you. We'll hear. May it please the Court. My name is Michael Cohen, and I represent PEMEX on this appeal. I think it's important to keep in mind here that security was given before any suit was filed. That was the LOU? That's the LOU, the first LOU. Now, such LOU. How much was that LOU? It was $530,000 plus $94,000 in interest. So it wasn't for the entire amount of the claim? No. Well, we didn't, unfortunately, PEMEX didn't have enough money that it owed to the ship owner for the entire amount of the claim. In fact, they really didn't know what the entire amount of the claim was. Didn't you have to arrest the ship then? No. The admiralty procedure is that you go and you can get security before even you start a lawsuit, and then those LOUs, like the ones here, contain their own time bars. But your security wasn't enough to secure your entire claim. Which is why we reserved the right to arrest the vessel to increase our security in the event that it was insufficient to cover the claim. But they also reserved their rights under the law, and that included the statute of limitations. First of all, the statute of limitations here was not the COTSA time bar applying by itself. It was incorporated by reference into the contract. It's just another contractual term. Well, COTSA applies to the law, to everything. Not to charter parties. And also, COTSA only applies carriage of goods to and from the United States. This was carriage of goods in Mexico. And the law was incorporated into the charter as a contractual term. So what we are dealing here is with contractual terms. What is the precise language that you're relying on saying giving you the right to have another maritime lien and an arrest on it? Is that in your first LOU? Yes. Yes, Judge, I'll say it. It's the language you quoted, except to the extent that the claim exceeds the amount of security provided herein. That's the prefatory paragraph, is that it? That's correct. And what that effectively does is it entitles us to increase security. We already have security. We may now go back and increase the security. At any time? At any time while the litigation is pending. That is the admiralty rule that is provided for in the Fred Lawrence, which is a case that we cited in the brief. And also under Rule E6, that is a general maritime rule about affecting security during the pendency of the litigation. For example, for limitation of liability cases, which is a specialized form of proceeding, although some of the cases my adversary has cited are, in fact, limitation cases, there is a written rule, Rule F7, which specifically discusses the timing of increasing security. Could you address Mr. Hardwood's point that despite the conditional language in the initial LOU that the interim proceeding was time-barred? Judge Fuentes, the basic point is that the time bar of the contractual time bar was satisfied, if I may explain. As I said before, these LOUs, which are given before even a lawsuit is started, they contain their own time bars. The time bar in the LOUs in this case was that the charter had to start a timely proceeding to confirm an arbitration award. If this LOU had been given after a lawsuit, I'm sorry, after a lawsuit had been started, I'm sorry. Does the pendency of the arbitration award affect your right to proceed in REM? Isn't this the issue here? The pendency of the arbitration award, we are attempting to collect the arbitration award under the security that was provided by the P&I Club. It specifically says that it will respond to an arbitration award in personam against Tbilisi or in REM against the vessel, and we are attempting to collect under that. Counsel, may I just interrupt you? We talked about the prefatory clause. How about paragraph six when they said that without prejudice to any defenses, put it that way, may have under applicable law, and applicable law governs and contains a one-year statute of limitation. So doesn't that seem to cut against your argument? With respect, Judge Almas said, not at all, because there is a difference in treatment in letters of undertaking. If a letter of undertaking is given as it was in this case in advance of any lawsuit having been started, then the letter of undertaking contains its own time bar, which requires that the charterer bring suit to confirm an arbitration award. You must contrast this with a situation where a letter of undertaking is given after a lawsuit has been started, but of course before the warrant of arrest is executed. In such a case, there is another time bar, and that time bar is, now, excuse me, I was flummoxed by your question. If I may go back. I thought it was a good question. Yes, it was a good question, and if I may go back, let me answer it. It's that an LOU, when an LOU is given as in this case on a claim that's subject to arbitration, before suit is started, those LOUs contain their own time bar, namely that the charterer must commence a lawsuit, a timely lawsuit to confirm an arbitration award. But when an LOU is given before a lawsuit is started on a claim that's subject to court adjudication, then the LOU recites specifically that the charterer must, it is conditioned upon the charterer, starting a timely lawsuit on its claim. And you can see that in the, there's an LOU that is quoted in the LNL Marine case, which is cited in my adversary's brief. What is a timely lawsuit? A timely lawsuit on the claim, Judge, as opposed to a timely lawsuit to confirm the arbitration award. Those are different. Here, it's very clear. We have no obligation to start a lawsuit until after there had been an arbitration award entered. And in fact, there's a very good reason for that difference in treatment. Because when the claims are subject to arbitration, a lawsuit before the arbitration is concluded would serve absolutely no purpose. The sole purpose would be to have it stay. Does that mean that so long as there is an arbitration proceeding pending under the LOU, you may file an in-rem proceeding? Under this LOU, generally not. Under this LOU, we may. We may in this because it was preserved that we could increase our security. Is that the essential basis for your saying that our in-rem proceeding was not time-barred? Well, in a way it is, but actually what I'm saying is that the COGSA statute, the statute of limitations, the contractual statute of limitations in this case, was satisfied by the first letter of undertaking, which acknowledges that and creates a different time bar, namely the time bar for confirming an award. Let me give you this as an example. Excuse me. Would you show us where in the 1993 LOU it says that which you are now telling us? Yes. I mean, what paragraph? I have it in front of me. It says it's on page 109 of the appendix, paragraph 1. To file a cause. To file a cause, we file the general appearance in persona on behalf of Tbilisi in any proceeding which you timely commence against Tbilisi in the United States District Court or the Southern District of New York to confirm an award of the arbitrators in the arbitration already commenced. Whereas if you look at the situation where a letter of undertaking is given before, given after a lawsuit is started before the vessel is arrested, as it is in, say, the LOL and L case that was cited by my adversary, and it's quoted there in extenso, it provides for the lawsuit that they will honor the letter of indemnity provided you commence a lawsuit against the vessel on your claim. Timely lawsuit against the vessel on your claim. And that would then require that such a lawsuit be started within the one-year statute of limitations. These LOUs contain their own time bars. And this time bar here did not run until after the arbitration was concluded because what we were dealing with was not an initial arrest of the vessel. What we were dealing with was an increase in security. Does that mean that you have a one-year time bar that begins immediately after the arbitration award is issued? No, actually it's three years in this case because it'd be subject to the New York Convention. So you have three years to file an interim procedure. Three years after the award, we would have three, up to three years after the award to start a proceeding to confirm the award. And the rule is that you're allowed to apply for an increase in security at any time during the pendency of the litigation. But the reason has nothing to do with tolling.  It has to do with the fact that the statute of limitations was satisfied. And the best evidence of that is the fact that PEMEX, that the owner does not argue that PEMEX was obligated to start a lawsuit against the ship before the Charter Party time bar expired in order to preserve the security it already had under the first LOU. In fact, it has paid the first LOU in full. If there was a time bar against... That's the $530,000. $530,000 plus $94,000. Yes, ma'am. So clearly the time bar was satisfied because otherwise they would have said that we had to commence a lawsuit in order to retain the security on the first LOU. That, of course, can't be so. The first LOU has its own time bar and says that you need only file after the award has been entered. That satisfies the toxic time bar and leaves for us an opportunity to apply for an opportunity to make an effort to obtain additional security for our claim if we found that we need it. What is the amount of the claim that is currently outstanding? The second LOU has been reduced to under $400,000, as I recall. $395,000. Yes, it's about $395,000 plus interest and costs. And the only way you're going to get that is through the seizure or the arrest of the ship? The only way we're going to get paid, as a practical matter, the only way we're going to get paid this arbitration award is through that letter of undertaking. Yes. Does the Second Circuit case, Tyson, have any bearing on this case? Yes. Tyson is an interesting case because it illustrates the close connection between an in rem action and an in personam action. What it really illustrates is why it was that this letter of undertaking was written the way that it was written. The teaching in Tyson and in the earlier Supreme Court decision in Marine against Dreyfus is that you start your arbitration and then you are able to use your arbitration award and execute it against the security that you get from arrest of the vessel. Now, Tyson is really clear. They had a timely arrest in Tyson. There was an arrest within the one year time bar. And you didn't do that? We didn't have to, Your Honor, because we had the first LOU. The first LOU satisfied the time bar. Well, that depends on the construction of the LOU. But the fact remains you did not arrest the vessel. We not only did not arrest the vessel, Your Honor. I can assure you if we had arrested the vessel, and we certainly could have arrested the vessel, we would have arrested it for more than $530,000. That's right. But we didn't. But you didn't try to arrest it. No, we didn't because we had security which said that we could apply for we could pursue an increase in security by arresting the vessel. I'm sorry? Is that the purpose of the LOU? In other words, a promise not to arrest the ship in exchange for an LOU? I want to say that this is an almost unique situation. As the Court undoubtedly appreciates, the cases that I've cited in connection with re-arresting a vessel for which security has been given are not very many, including a 100-year-old case from England and two decisions from the New Zealand Court of Appeal. So this is not a subject which comes before an admiralty appeals court, as you sound, very often. But it does happen, and it happens for precisely the same reason that it happened here. Namely, there was an agreement that there could be an increase in security. And on basis of that agreement, which in case of the last New Zealand case, they re-arrested the vessel four times. And so I would leave you only with the thought that we are dealing here with an increase in security, not an initial arrest of the vessel. And for increases in security, they may be undertaken at any time before the litigation is concluded. Well, isn't the quick answer to Judge Chiawetti's question is that a letter of undertaking dissolves the maritime land? This one did not. Is that not the general purpose of a letter of undertaking? To dissolve the maritime lien, and without a maritime lien, you cannot arrest a vessel. Usually that's true, but it was not true here because we preserved the right to arrest the vessel at a later time. But you're absolutely right, Judge Aldersett, that in almost every case, the purpose of a letter of undertaking is to release the lien. In this case, though, it did not. Thank you. Thank you. Your Honours, if I may address Judge Aldersett's question first. I agree with my learned friend's answer that the general purpose is to dissolve the lien. In this case, the first LOU did not, but it preserved that lien provided and subject to the defences in paragraph 6. Judge Fuentes asked the relevance of the Second Circuit's decision, per curiam and tisum. In footnote 2 of that decision, the Court expressly noted that it did not pass on whether or not an in rem action could survive dismissal of the in personam action. In the lower court, my learned friend's colleague argued that separating in rem and in personam actions is taking the personification of the vessel too far, which would overturn many centuries of admiralty law, which should be embraced and not killed. The Fifth Circuit in 59 said the purpose and justification for LOUs is widespread in all maritime ports. The construction that my learned friend puts on this LOU will remove that efficacy. It's puzzling, indeed, that the issue of a time bar within the letter of undertaking itself is now raised in argument, and it wasn't raised before. But I invite the Court to look at paragraph 1, in which that self-sustaining time bar is stated. It is in respect of an action against Tbilisi Shipping Company. Tbilisi Shipping Company is defined in the first paragraph of that letter, and it refers to an action to confirm an award against Tbilisi. It does not provide a time bar or a waiver of a time bar for any time to confirm an award against the ship. It should be noted that... What is Tbilisi if it's not the ship? Are you suggesting that because there's a change in ownership? No, no, no, Your Honor. Tbilisi is the in personam defendant. The personification of the vessel in rem is a well-acknowledged admiralty principle. The in rem defendant here is separate from the in personam defendant. So I'm sorry, this is the quirks of admiralty law. But in paragraph 1, there's a reference to commencing an action to confirm an award against Tbilisi Shipping. Tbilisi Shipping is in personam. That's the company. That's the company. Ship owner, I should call it. Not the ship. So that argument, which was raised by my learned friend just now, doesn't appear in the briefs and didn't appear in the court below. The argument is this. That the COGSA time bar, because of the extremely short period remaining, using their words, was or must have been satisfied by the parties, by me, in negotiating the 1993 letter of undertaking with the other side. And the statement just now that, well, they didn't know the size of the claim at the time that they released the 530,000 wrongfully withheld, has to be compared alongside the person who wrote these briefs and his statement to the lower court in his affidavit. It's at record 147. Quote, I initially requested a letter for the full amount of the claim. But opposing counsel insisted that the amount be limited to the amount of hire being withheld. They knew that they had to arrest the ship to get the full amount of the claim. They changed it to that. Yes, Your Honor. Counsel, I know our time is limited, but it would be helpful to me that if you would say, you would synthesize in one paragraph reasons why we should reverse the district court's order refusing to vacate. Very good, Your Honor. It is undisputed that the one-year suit period provided by the Carriage Goods by Sea Act applied to Pemex's cause of action in rem against the vessel. The vessel was not arrested prior to the expiry of that suit period. Therefore, there had to be some provision that either in the letter of undertaking itself or some other waiver of a right to arrest the vessel some nine years after the expiry of the suit. And there is none. It is all based on the conjecture on page 17 of what the parties considered was satisfied, which cannot be reconciled with paragraph 6, which is the express reservation of rights, including the time bar defense. See the MV Franca, District of Maryland, where exactly the same argument now advanced was called facetious. Mr. Harwin. Thank you. When Mr. Harwin completed his argument, he said, ordinarily, an LOU is to release the lien. He says it's not here because here the LOU preserved the right to, and then, I don't write fast enough, and he sat down. It preserved the right to. Well, I would. What did he say? I think he probably said it reserved the right to increase security. And how do you answer that? And I agree that the first LOU provided in March 1993 reserved the lien until its expiry in December 1993.  Thank you, Your Honors. Thank you. Judge Alderson, do you have any more questions? No, Your Honor. Thank you. Thank you, gentlemen. We will take this simulating case under advice. I have a comment to Judge Ciuentes.